## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **HEATHER O'CONNOR,** | **CASE NO.:    20 – cv -   210** |
| Plaintiff, | |
| **v.** | **Hon.:** |
| | |
| **SAM CRONKHITE,** | **PLAINTIFF DEMANDS A JURY** |
| **MICHAEL LONG, and the** | |
| **CITY COMMISSION FOR THE** | |
| **CITY OF MANTON,** | |
| Defendants. | |

Collin H. Nyeholt (P74132)
LAW OFFICES OF
CASEY D. CONKLIN, PLC
4084 Okemos Road, Ste B
Okemos, MI  48864
(517) 522-2550
collin@caseydconklin.com

## COMPLAINT and JURY DEMAND

### JURISDICTION AND VENUE

1.    This is a claim for sex discrimination in violation of the Fourteenth Amendment, and unlawful retaliation for the exercise of First Amendment Rights, pursuant to 42 USC § 1983 *et seq*.

2.    Plaintiff HEATHER O'CONNOR is a permanent resident in the State of Michigan.  Her principal residence and business office location, at the time of the events described in this Complaint and to the present, were and are within the City of Manton, the County of Wexford,

and the jurisdictional bounds of the United States District Court for the Western District of Michigan.

3.    Defendant SAM CRONKHITE ("CRONKHITE") is, and at the time of the events described in this Complaint was, a public official serving the City of Manton in varying capacities as discussed to follow.

4.    Defendant MICHAEL LONG ("LONG") is, and at the time of the events described in the Complaint was, and is, the Chief of Police for the City of Manton.

5.    Defendant CITY COMMISSION FOR THE CITY OF MANTON ("CITY OF MANTON") is the governing board exercising executive power for the City of Manton, a political subdivision within the State of Michigan.

6.    This claim stems from Defendants' actions towards the Plaintiff that occurred in Manton, MI.

7.    The Court may exercise *general in personem* jurisdiction over the Defendants by reason of their permanent presence within the Western District.  In the alternative, the Court may exercise *specific jurisdiction* over the dispute because the transaction or occurrence giving rise thereto resulted from Defendants' business activities within, and directed towards, the Western District of Michigan.

8.    The Court may exercise subject matter jurisdiction over the claims stemming from federal law pursuant to 28 USC § 1331.

9.    Venue is properly laid in this forum pursuant to 28 USC §§ 1331(b)(1) and (b)(2).

## <u>ALLEGATIONS</u>

10.   Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

11.   Plaintiff HEATHER O'CONNOR is a resident of the City of Manton, Michigan. She and her husband own their principal residence in the city. She and he also own and maintain rental property within the city. And, she owns and operates a business office, as the CEO of her company, within same.

12.   Due to her standing in the community, she was encouraged to run for the office of Mayor in the 2019 election cycle. She announced her candidacy for the office in April of 2019.

13.   Plaintiff O'CONNOR's principal opponent for the Mayor role was then-City Commissioner, Defendant CRONKHITE.

14.   Defendant LONG was a personal friend and associate of CRONKHITE.

15.   After she announced her decision to run against CRONKHITE, LONG began to refuse to respond to provide police services to the Plaintiff and harass her.

16.   In June of 2019, Plaintiff hired a surveyor to confirm property lines on her rental property. During the survey, personnel of the adjacent business, Master Auto, became profane and belligerent towards the surveyor. Plaintiff reported this incident at a Manton City special meeting held on June 27, 2019. Then-mayor Garry Brown stated that he would instruct Defendant LONG to investigate and follow up. LONG never did.

17.   In July of 2019, Plaintiff's renter reported a noise complaint to LONG via the City of Manton contact link on the website. He failed to respond to it at all for several days.

18.   Defendant CRONKHITE, in response to her running against him, began physically intimidating Plaintiff in response to her candidacy.

19.   On August 20, 2019 there was a scheduled public meet and greet for the mayoral candidates at the Manton City Council Meeting which was held at the Manton VFW. While seated at a table, Defendant CRONKHITE walked up behind the Plaintiff and placed both hands on her shoulders from behind. She and he were not friends, coworkers, or associates and there was absolutely no reason for him to feel that physical contact of this nature was an acceptable thing to do. Plaintiff was startled and she told him, unequivocally, that this was "not a good thing to do."

20.   Plaintiff, a USG Department of the Army endorsed civilian contractor serving in the combat areas of the Iraq and Afghanistan campaigns, is particularly disturbed by persons who touch her unexpectedly and without reason.

21.   On September 5, 2019 Plaintiff was notified of a suspicious man creeping around the fence line on the North side of her property mid-morning.  The following day, September 6, Plaintiff contacted Defendant LONG and reported the creeper. LONG responded that "it's not a big deal, not worth reporting." Plaintiff stated that yes, it *was* a "big deal," because suspicious people creeping around on her property makes her feel unsafe. LONG nevertheless refused to investigate further. Plaintiff stated she, at least, wanted the incident documented in a police report should anything else happen. LONG responded "listen, this is no big deal. It is as important as the feral cats issue and not worth reporting."

22.   The afternoon of September 6, Plaintiff's tenant at her rental property had a similar incident. Their dog began barking. The renter stepped outside and saw a man with what looked like a tape measure stepping off the sidewalk and into the property line. The tenant yelled that she would call the police and the man wandered off. Given Defendant LONG's stated refusal to serve and protect the Plaintiff, she was unable to report this incident.

23.   On September 17, 2019 there was another Manton City Council meeting at the Manton VFW. Plaintiff was again seated at a table. Defendant CRONKHITE entered the venue, walked behind Plaintiff, and placed his hand on her shoulder toward her neck area. Plaintiff responded by telling him, unequivocally, "don't."

24.   On September 30, 2019 a blight report was made against Plaintiff stating there was a mattress in her backyard at her primary residence. The yard is fenced in and the report was erroneous and inaccurate. Plaintiff approached LONG and asked him to correct the report. He refused, saying "no big deal, must be South Michigan."

25.   On October 15, 2019 Plaintiff was in attendance at another Manton City Council meeting. Defendant CRONKHITE *yet again* placed his hand on Plaintiff's shoulder toward her neck area. She told him, yet again "no touching." DPW Supervisor Kris Musselman overheard her say this and asked City Clerk, Jessica Schisser, if she heard Plaintiff and asked if CRONKHITE had ever done the same to her.

26.   After this meeting, Plaintiff approached City Commissioner Troy Jones and asked for his assistance in addressing CRONKHITE's unwanted touching. Jones stated that he had received similar complaints from at least two other women, indicating that CRONKHITE had made unwanted physical contact even after continued objections to his behavior.

27.   Upon information and belief, Commissioner Jones notified the then-current Mayor, Garry Brown, as well as Defendant CRONKHITE about Plaintiff's complaint. Nevertheless, no action was taken to curtail his unwanted touching.

28.   The City of Manton's Charter provides that City Employees "shall not engage in political activities on behalf of a candidate for or non-partisan election during those hours when the employee is being compensated for the performance of his/her duties as a City employee. This

includes distributing or circulating literature or paraphernalia for or against an issue or candidate." It also provides that "[e]mployees involved with political campaigns and discussion shall do so as private citizens." And, it states specifically that "[e]mployment status with the City shall not be referenced when campaigning for or against any candidate or ballot issue, question or proposal. Employees involved with political activity shall neither claim to represent the City nor claim their views or opinions reflect the views or opinions of the City."

29.   The foregoing language may be found at City of Manton Policy rev 02252019, page 12.

30.   Defendant CRONKHITE, in flagrant violation of the City Charter, proceeded to print and distribute door hangers indicating that he was "endorsed" by Manton City Fire Chief Eric Wilkins, Manton City DPW Kris Musselman, and Defendant Manton City Chief of Police Michael LONG. Defendant CRONKHITE also stated, in a video he published on Facebook, that he was endorsed by Wilkins, Musselman, and Defendant LONG.

31.   Plaintiff reported Defendant CRONKHITE's campaign improprieties to the City Clerk who, in turn, passed the information on to the current Mayor, Garry Brown, via email. No action was taken to curtail CRONKHITE's flagrant and ongoing violation of the city charter.

32.   During the campaign, Defendant CRONKHITE received biased treatment and access to information from City staff. In contrast, when Plaintiff visited the City Clerk for clarification on a procedure, the Clerk was chastised for offering "favoritism." Plaintiff asserts that this action demonstrated bias towards CRONKHITE during the electoral process.

33.   Defendant CRONKHITE won the election, and was elected to the position of Mayor of the City of Manton.

34.   On November 22, 2019 Plaintiff wrote and filed a formal complaint to the Defendant CITY OF MANTON. The document detailed the ongoing harassment she had suffered from Defendant

CRONKHITE during the election. The document identified CRONKHITE's campaign improprieties and the failure of the City to do anything regarding same. She identified the biases and favoritism towards CRONKHITE during his candidacy. And, the document identified Defendant LONG's retaliatory failure to investigate the trespass on her property.

35.     Plaintiff signed the aforesaid Formal Complaint before a notary.

36.     Plaintiff submitted a copy of the Complaint to Michigan Senator VanderWall.

37.     The Defendant CITY OF MANTON failed and refused to take any action to resolve Plaintiff's aforesaid complaints.

38.     The City has, supposedly, a "zero tolerance" policy towards acts of sexual harassment by city officials. The City has demonstrated that it is willing, and able, to invoke this policy even against ranking members of City government. On or about December 5, 2019 the City ~~Clerk~~ Treasurer made an allegation that City Commissioner Troy Jones had stated he ~~would like~~ was going to "use up my time and sit here and look at Marlene's boobs". This allegation was false. However, now-Mayor CRONKHITE immediately suspended him from service, noting the City's "zero tolerance" policy for sexual harassment. Despite its clear ability, and mandate, to take swift and decisive remedial action even against its ranking officials, to date, no action has been taken whatsoever against CRONKHITE for his ongoing improper and unwanted touching towards the Plaintiff.

39.     On December 17, 2019 Plaintiff attended another Manton City Council meeting. Plaintiff and her husband were in attendance.

40.     While Plaintiff and her husband were seated at a table, Defendant LONG beckoned her to the hallway of the building. She asked her husband to follow and he did. In the hallway, LONG proceeded to tell her that it was "not a good idea for you to be here." Plaintiff asked "why?"

LONG told her that it was "like a no contact order." Plaintiff asked him "what no contact order" and stated that she was unaware of any such action. LONG stated "like one signed by a judge." Plaintiff asked the judge's name. LONG continued in an aggressive fashion, moving closer to Plaintiff, and suggested that she was not welcome at the *public* City Council meeting. Plaintiff's husband reminded him that, as City residents, he and she had every right to attend. LONG then stated that Plaintiff should not speak at the meeting. Not to be cowed by LONG's intimidation, Plaintiff informed him that she had a prepared statement and that Chris Lamphere from the Cadillac News was present at her specific request.

41.   Plaintiff felt truly physically threatened by Defendant LONG's actions and behavior described above.

42.   It was LONG's intent, in engaging in the behavior described above, to threaten and intimidate Plaintiff from speaking at the City Council meeting regarding her ongoing complaints described above.

43.   On January 2, 2020 Plaintiff submitted a second formal written complaint to the Manton City Council, detailing the ongoing harassment stated above.

44.   To date, nothing has been done to remedy her concerns.


## COUNT 1 – FIRST AMENDMENT RETALIATION
### *Pursuant to 42 USC § 1983 et seq*
**As Against All Defendants**

45.   Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

46.   Plaintiff engaged in the following activities protected by the First Amendment of the United States Constitution:

    **a.** Declaring her candidacy for the office of Mayor of the City of Manton,

    **b.** Attending, and attempting to attend, various political gatherings and 'meet and greets' related to her candidacy,

    **c.** Making formal, and repeated, complaints about the campaign improprieties of Defendant CRONKHITE and violations of the City charter,

    **d.** Making formal, and repeated, complaints about the ongoing improper touching and sexual harassment to which she was being subjected by Defendant CRONKHITE,

    **e.** Making formal complaints about the ongoing harassment, intimidation, and discrimination she was suffering from Defendant LONG, and

    **f.** Speaking, and attempting to speak, at City Council meetings regarding same.

47. Defendant LONG took the following adverse actions against Plaintiff:

    a. Engaging in discriminatory application of police resources because of, and in response to, her protected activity described above, and

    **b.** Knowingly and intentionally using the power of his office to threaten and intimidate Plaintiff from speaking at City Council meeting regarding her ongoing complaints described herein.

48. Defendant CRONKHITE took the following adverse actions against Plaintiff:

    a. Physically threatening and intimidating her from engaging in protected activities through unwanted physical contact.

49. Defendant CITY OF MANTON approved and ratified the ongoing harassment and retaliation by failing and refusing to remedy same, despite its clear obligation to do so after being presented with Plaintiff's formal complaints regarding same.

50.     Each of the aforesaid actions in the previous two paragraphs could deter a person of ordinary firmness from engaging in the actions that Plaintiff did.

51.     There is a causal connection between Plaintiff's protected conduct identified herein and the adverse actions Defendants took against her.

52.     In *Monell v. New York City Dept. of Social Services,* 436 US 658, 691 (1978) the Supreme Court concluded that municipal liability under 42 USC § 1983 is limited to deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature."   In *Pembauer v. City of Cincinnati*, 475 US 469 (1986) the Supreme Court abrogated *Monell* by holding that when an "ultimate decision maker" in a municipal organization is involved in the deprivation, or when that "action is directed by those who establish government policy" the municipality will be liable for the actions. *Pembauer,* in fact, held that a municipal organization could be held vicariously liable because a Sheriff was personally involved in the unconstitutional acts complained of.

53.     Defendant LONG, the Chief of Police for the City of Manton, was the "ultimate decision makers," as the Supreme Court used that term in the *Pembauer* decision, as to public safety matters.   He had full and final decision whether, and to what extent, to direct police resources to investigate crimes that were reported. He had full and final authority to determine whether, and to what extent, the police power for the City of Manton should be used to prevent a private party from attending and speaking at Board meetings. Therefore, Defendant CITY OF MANTON is vicariously liable for the actions he took against Plaintiff in retaliation for and suppression of her First Amendment Rights, pursuant to 42 U.S.C. § 1983.

54. Plaintiff has suffered damages including but not limited to:

    **a.** Loss of prestige and business opportunities as a result of, the defendants' actions outlined herein.

    **b.** Humiliation, outrage, anger, and frustration as a result of Defendant's wrongful actions outlined herein, and

    **c.** Attorney's fees and court costs in opposing Defendants' unlawful violation of her rights.

55.    Due to the flagrant, willful, and wanton violation of Plaintiff's rights she is also entitled to an award of punitive and exemplary damages pursuant to applicable law.

### COUNT 2 – DISCRIMINATION BASED UPON SEX
*Pursuant to 42 USC § 1983 et seq*
**As Against All Defendants**

56.    Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

57.    Plaintiff had a right to equal treatment by her governmental agency that was guaranteed by the 14th Amendment to the Constitution. *See Washington v. Davis*, 426 U.S. 229, 243 (1976). A state actor violates this provision when they discriminate against an individual based on sex. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988); *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003). The claim mirrors that of a sex discrimination claim under Title VII, but does not require administrative exhaustion. *Id.*

58.    As a private individual, Plaintiff had a right to equal access to, and treatment of, her government.

59.    As a political candidate, Plaintiff had a right to equal access to campaign venues.

60. Defendant CRONKHITE inappropriately touched Plaintiff on several occasions. He touched her in inappropriate and private areas, often placing his hands on the shoulders at the nape of her neck.

61. Plaintiff made CRONKHITE aware that she found the touching objectionable, and repeatedly told him not to do it. Yet, he continued to do so.

62. Defendant CRONKHITE's touching was particularly offensive to her as a woman.

63. The City of Manton's City of Manton Policy rev 02252019 particularly provides that unwanted touching of this nature is considered sexual harassment.

64. In touching the Plaintiff as he did, Defendant CRONKHITE denied Plaintiff equal access to campaign facilities by reason of her sex.

65. The Defendant CITY OF MANTON, despite its clear obligation to do so, failed and refused to take any action to prevent CRONKHITE's inappropriate touching.

66. Defendant LONG particularly attempted to threaten and intimidate Plaintiff from opposing CRONKHITE's ongoing inappropriate touching.

67. Plaintiff has suffered damages including but not limited to:

    **a.** Loss of prestige and business opportunities as a result of, the defendants' actions outlined herein.

    **b.** Humiliation, outrage, anger, and frustration as a result of Defendant's wrongful actions outlined herein, and

    **c.** Attorney's fees and court costs in opposing Defendants' unlawful violation of his rights.

68. Due to the flagrant, willful, and wanton violation of Plaintiff's rights she is also entitled to an award of punitive and exemplary damages pursuant to applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1. COMPENSATORY damages as may be appropriate to compensate Plaintiff for Defendant's unlawful conduct,

2. EXEMPLARY damages, in whatever amount the Court should deem appropriate,

3. PUNITIVE damages, in whatever amount the Court should deem appropriate,

4. ATTORNEY'S FEES, in an amount determined reasonable by the Court, so wrongfully incurred in order to remedy the violation of her rights described herein, pursuant to the various statutes identified herein,

5. Pre and post judgment interest at the appropriate statutory rate, and

6. Such other relief as this Court may deem just and appropriate in law or in equity.


## PLAINTIFF DEMANDS A JURY


Respectfully Submitted,

Dated: 3/11/2020                          __ /s/ Collin H. Nyeholt_____
Collin H. Nyeholt,
Attorney for the Plaintiff