# EXHIBIT

# J





Kent E. Gerberding
Michael L. Conlon
Catherine D. Jasinski
Thomas A. Grier
Jeffrey R. Wingfield
Julie A. Gilhun
David M. Glancy

Of Counsel:
Richard W. Ford

Harry T. Running
(1911 – 1992)
William L. Wise
(1925 – 2014)
Mike C. Gerberding
(1930 – 2015)

Traverse City
126 E. State Street
PO Box 686
Traverse City, MI
49685-0686
Ph. 231.946.2700
Fx. 231.946.0857

Frankfort*
Frankfort, MI 49635
Ph. 231.946.2700

Franklin*
32770 Franklin Rd.
Franklin, MI 48025
Ph. 800.938.8577

*By Appointment Only

January 23, 2020

Honorable Sue Fullerton, Mayor Pro Tem
Members of City of Manton Commission
306 West Main Street
Manton, MI 49663

    RE:   Heather O'Connor Complaint

Dear Sue and City Commission Members:

Overview

On November 22, 2019, Heather O'Connor, an unsuccessful candidate for the City's Mayor's office, filed a complaint against Mayor Sam Cronkhite. Ms. O'Connor's complaint, for the most part, involves alleged conduct occurring prior to the November 5, 2019 election, but was made after Mayor Cronkhite took office. Therefore, the matter was referred to Sue Fullerton, who as Mayor Pro Tem, has the same review authority as the Mayor and asked that I investigate the complaints made by Ms. O'Connor.

Section 6.10 of the Charter provides authority for the City Commission to conduct an investigation of a complaint:

> Investigations. The commission or its duly appointed representatives may inquire into the conduct of any city department, office, officer, or employee. Failure on the part of any officer or employee to produce books, papers, and other evidence as requested by the commission shall constitute misconduct in office. [Emphasis added]

The complaint alleges "inappropriate and unwelcome physical contact" and campaign improprieties. It should be noted, at the outset, that at the time of the interaction between Mr. Cronkhite and Ms. O'Connor, that although Mr. Cronkhite was an elected City Commissioner, he was also a candidate for mayor, as was Ms. O'Connor, and the subject interaction, while occurring at the start of public meetings, also occurred in the context of two persons with equal status running for Mayor. Mr. Cronkhite had no supervisory or other position of authority over Ms. O'Connor, and so there was an absence of a structural relationship where one person has power over another which can make harassment particularly offensive and insidious.

1

Sections 6.10 and 6.3 d. of the City Charter, allow investigation of misconduct of a City Commissioner occurring while *in office*. Michigan appellate case law is clear, however, that *private conduct* may not be considered. It is perhaps arguable whether the conduct of a City Commissioner, occurring at public events, while a candidate for Mayor can, in fact, constitute misconduct in office. Nonetheless, as a matter of discretion, this review has proceeded.

Heather O'Connor's written Complaint is attached as Exhibit A. Mr. Cronkhite's rebuttal response is attached as Exhibit B.

Ms. O'Connor's Complaint states that when Mr. Cronkhite greeted her he would grasp her upper arm or shoulder. This occurred on three separate occasions: at an August 20, 2019 candidate "Meet and Greet" meeting at the VFW Hall; before a September 17, 2019 City Commission meeting at the VFW Hall; and before an October 15, 2019 City Commission meeting at the VFW Hall. She believed this manner of greeting her violated her personal space and that the purpose was to intimidate and dominate. She said that she asked Mr. Cronkhite not to do so after each incident.

With the foregoing overview in mind, my investigation focused on three elements: 1. Did Mr. Cronkhite touch Ms. O'Connor on her shoulder and/or arm as alleged? 2. Was the touching *intended* to be harassing or dominating? 3. Did the touching continue after Ms. O'Conner expressly told Mr. Cronkhite not to do so?

With respect to the first two questions, I spoke to several members of the City Commission, men and women, and all agreed that Mr. Cronkhite often will clasp an arm or shoulder as part of his greeting, and the Commission members had experienced the same type of greeting themselves. No one viewed it in any way as harassing or dominating, or in any way inappropriate. It is viewed as part of Mr. Cronkhite's effort to be collegial. It does not appear that Mr. Cronkhite greeted Ms. O'Connor any differently than he greeted other members of the City Commission, or other colleagues.

Notably, there is no evidence that Mr. Cronkhite's greeting style has been interpreted by women, in particular, as somehow dominant or harassing generally. All four of the female City Commissioners reported that they have been similarly greeted by Mr. Cronkhite (at City Commission meetings, but also at other events) and that they have never considered it to be offensive. Several of these Commissioners also found it concerning and offensive that Ms. O'Connor would attack Mr. Cronkhite's character based on what they considered to be meritless and unfounded allegations based upon their own experience.

### August 20, 2019 Meet and Greet

Ms. O'Connor alleges that the first incident occurred at a "Meet and Greet" candidate event on August 20, 2019 at the VFW Hall. At that meeting she alleges that Mr. Cronkhite "placed his hands on my shoulders from behind". Ms. O'Connor alleges that she verbally stated to Mr. Cronkhite "Not a good thing to do." She alleges that Lisa Gillett and another person overheard the statement.

DEFS' RESP TO PLF'S DISC REQS 000160

Lisa Gillett told me that she recalled Mr. Cronkhite, when greeting Ms. O'Connor, placing his hand on Ms. O'Connor's upper arm just below her shoulder. She did not recall Ms. O'Connor saying anything to Mr. Cronkhite about it inside the VFW hall at the time. Mr. Cronkhite said he did not hear Ms. O'Connor say anything either. Lisa Gillett further recalls that when she and Ms. O'Connor were in the parking lot after the "Meet and Greet", smoking a cigarette, as they often did after Chamber of Commerce meetings, Ms. O'Connor then commented about Mr. Cronkhite's manner of greeting.

Ms. O'Connor also alleges that a third person, named Lesley Boyer, also overheard the conversation, but it is my understanding that Ms. Boyer is also Ms. O'Connor's tenant, and that contacting her would place Ms. Boyer in a difficult position needlessly (and which might call into question the reliability of a statement), and that any statement would be unnecessary given the statement of another eyewitness, Lisa Gillett.

In summary, there is no evidence that Mr. Cronkhite was informed of Ms. O'Connor's objection at this meeting, although Ms. O'Connor did comment about it in a casual manner to another person after the meeting.

### September 17, 2019 City Commission Meeting

Approximately one month later, before the September 17, 2019 City Commission meeting, Ms. O'Connor claims that when she was sitting at a table, that Mr. Cronkhite walked into the room, walked behind her and "placed his hand on my shoulder towards my neck." She said she openly told Mr. Cronkhite "don't." Mr. Cronkhite denies that she said this to him. Other City Commissioners who were in close proximity also stated to me that they did not hear Ms. O'Connor make such a statement.

### October 15, 2019 City Commission Meeting

Lastly, Ms. O'Connor claims Mr. Cronkhite again placed his hand on Ms. O'Connor's shoulder when greeting her at the City Commission meeting on October 15, 2019. She says that she loudly said "no touching." Ms. O'Connor stated that Kris Musselman overheard her say this to Mr. Cronkhite.

I questioned Mr. Musselman about this and he said that he did recall Mr. Cronkhite greet Ms. O'Connor, and then move away to greet another person. It was only after Mr. Cronkhite had moved on to the second person, that Ms. O'Connor made her statement about the greeting. Mr. Musselman did not believe that Mr. Cronkhite heard this statement as he had moved away from Ms. O'Connor when it was made. Mr. Musselman said he later told Mr. Cronkhite about Ms. O'Connor's statement, either later that day or the next day, which Mr. Cronkhite does not deny.

Mr. Cronkhite's rebuttal letter, dated December 6, 2019, denied that Ms. O'Connor had ever asked him to stop greeting her in his usual manner. His letter states:

> She did not say this directly to me or in a way that I would have heard it. If I had ever been told, or even given the least impression, that I was behaving in

3

a manner offensive to someone, I would have immediately apologized and made all efforts to correct the situation.

Mr. Cronkhite also mentioned that he recalled multiple instances of friendly interactions with Ms. O' Connor in the late summer and/or early fall of 2019. For example, these encounters included a visit with Ms. O'Connor at the Labor Day car show, at the Chamber of Commerce Banquet and a chance meeting at the Meijer store in Cadillac. All were friendly according to Mr. Cronkhite. They exchanged pleasantries and Ms. O'Connor said nothing, either directly or indirectly, which would have given him any indication that she did not like his manner of greeting.

In summary, there is no evidence that the manner of the greeting was intended in any way to be harassing or to dominate. Mr. Cronkhite's greeting to Ms. O'Connor was consistent with his greeting to other colleagues, both male and female. Ms. O'Connor certainly has the prerogative not to be greeted in such a manner if she found it offensive and had she so informed Mr. Cronkhite. However, there is no evidence that Ms. O'Connor said anything to Mr. Cronkhite and that he disregarded her request. Mr. Cronkhite only learned that Ms. O'Connor found his greeting objectionable after the October 15, 2019 City Commission meeting. There are no claims of inappropriate touching by Ms. O'Connor after October 15, 2019.

Ms. O'Connor also wrote that she learned through former Commissioner Troy Jones that two other women had made similar complaints. However, because these women have not been identified, because there is no indication that these women were either City employees or officials, there was no basis to conduct a further inquiry.

Campaign Improprieties

Ms. O'Connor then raises several other matters she believes to be campaign improprieties.

Ms. O'Connor complains that the names of three upper level city employees were listed on Mr. Cronkhite's campaign signs and/or electronic social media as supporters and that the titles of these City employees were included in the endorsement. Ms. O'Connor claims that these actions violated parts of the City's Personnel Policy which addresses political activity by City employees.

The Policy does not apply to Mr. Cronkhite as an elected City Mayor, and I do believe it appropriate to comment further about the actions of City employees.

On page 4 of her Complaint, Ms. O'Connor raised a number of claims which she has categorized generally as campaign bias.

In one instance, during a City Commission meeting several months ago, former Mayor Garry Brown offered to go through the City's books and accounting procedures with then Commissioner and mayoral candidate Sam Cronkhite. Ms. O'Connor was in the audience and claims this showed bias.

4

DEFS' RESP TO PLF'S DISC REQS 000162

It is my understanding that, at the time of this discussion, Mr. Cronkhite as a serving City Commissioner, was also a Chairperson of the City Commission's Finance Committee, and that then Mayor Garry Brown offered to go over the accounting procedures with Mr. Cronkhite in order to prepare for future City Committee meetings on this subject.

My further understanding is that Ms. O'Connor never made an affirmative request to Garry Brown to also review the procedures. Had Ms. O'Connor done so, I am sure that Garry Brown would have made himself available to Ms. O'Connor.

For these reasons, I do not believe any bias was shown towards Ms. O'Connor by these events.

Although other actions that Ms. O'Connor alleges do not appear to be improper, I do not believe that the City is the appropriate body to review these complaints.

Ms. O'Connor claims that some of Mr. Cronkhite's temporary campaign signs were left up after the time period allowed by the City Code. When Ms. O'Connor's Complaint letter came to my attention, it is my understanding that all of Mr. Cronkhite's campaign signs within the city limits had been taken down. There was a related claim about a street address discrepancy, but since both addresses are within the City, I do not see the need for further discussion.

Lastly, a photograph shows that Mr. Cronkhite raised his left hand during a swearing in ceremony, which Ms. O'Connor claims is inappropriate. Section 5.4 of the City Charter discusses the oath of office for new City officers. The Michigan Constitution, Article XI, Section 1 contains the wording for the oath. Neither the Charter nor the Michigan Constitution require that the person taking the oath to raise the right or the left hand, despite the sometimes customary practice referring to the right hand.

Please let me know if you or members of the commission has any questions or concerns. Otherwise, I believe I have fully investigated Ms. O'Conner's complaints. I do not find any support for the allegations and do not recommend any action by the City Commission.

Sincerely,

*Thomas A. Grier*

Thomas A. Grier

DEFS' RESP TO PLF'S DISC REQS 000163